```
                IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION


UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
                              ) Case No.
     vs.                      ) 8:18-CR-00051-MSS-CPT
                              )
                              )
DAVID H. HOWARD,              )
                              )
          Defendant.          )
```

---

**VIOLATION OF PRETRIAL RELEASE HEARING
BEFORE THE HONORABLE CHRISTOPHER P. TUITE
UNITED STATES MAGISTRATE JUDGE**

JUNE 28, 2018
3:36 P.M.
TAMPA, FLORIDA

---

Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.

---

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

```
 1   APPEARANCES:
 2
 3   FOR THE GOVERNMENT:
 4
 5           Jay G. Trezevant
 6           United States Attorney's Office
 7           400 N. Tampa Street, Suite 3200
 8           Tampa, Florida  33602
 9           (813) 274-6000
10
11   FOR THE DEFENDANT:
12
13           David Scott Boardman
14           David Scott Boardman, PA
15           1710 East 7th Avenue
16           Tampa, Florida  33605-3806
17           (813) 242-6265
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2                       - - - o0o - - -
 3            THE COURT:  Madam Clerk, would you please call the
 4   case.
 5            COURTROOM DEPUTY:  United States of America versus
 6   David H. Howard, Case Number 8:18-CR-51-T-35CPT.
 7            THE COURT:  And, Counsel, could I have your
 8   appearances for the record.
 9            MR. TREZEVANT:  Good afternoon, Your Honor.
10   Jay Trezevant for the United States.
11            THE COURT:  Good afternoon.
12            MR. BOARDMAN:  Scott Boardman for David Howard.
13            THE COURT:  Good afternoon, Mr. Boardman, and
14   good afternoon, Mr. Howard.
15            We're here because of a pretrial services petition
16   and memorandum detailing a number of pretrial release
17   condition violations that Mr. Howard allegedly committed.
18            Mr. Trezevant, what's the Government's position?
19            MR. TREZEVANT:  Your Honor, we believe the
20   defendant should be detained pending his -- the beginning of
21   his sentence for the crime, the underlying crime.
22            THE COURT:  And the basis for that?
23            MR. TREZEVANT:  Yes, sir.  He is presently --
24   well, initially he was on pretrial release which he
25   violated, and ultimately ended up on a home -- on a monitor,
```

```
 1   which is the last -- pretty much the last step before a
 2   person is in fact detained.  While on a monitor he has
 3   violated the conditions of the monitor on several occasions.
 4   First off, on June 19th, 2018, obviously per the allegation
 5   he left the residence prior to his approval time.
 6           On June 20th, 2018 he actually -- and, frankly,
 7   this one is a little more concerning, though the conduct is
 8   not that aggressive, but he went -- he was going to his
 9   physician's and he asked for permission to go by
10   Krispy Kreme and was specifically told no, you can't do
11   that, and so he on his own made the decision, well, I'm
12   going to do that because it's no big deal.  It's just that
13   he's absolutely ignoring his pretrial detention conditions.
14   He went to Walgreen's.
15           On June 21 he again went outside the time he was
16   supposed to.  On June 21, much like June 20th, he went to
17   McDonald's.
18           So when you look at this, while the violations are
19   not significant, those violations, we are talking about one
20   every single day.  I mean, this is somebody who every single
21   day is violating his monitor, which, you know, if you have a
22   monitor and you just drive around town anywhere you want to
23   go, you don't really have -- are not complying with what
24   you're supposed to be complying with.
25           Then on June 25th he failed to report for drug
```

```
 1   testing, and he's already tested positive once, which -- for
 2   cocaine, and now on June 19th, 2018 he failed to attend his
 3   individual mental health counseling session, and that is,
 4   of course, important because he had discussed with his
 5   Officer that he in fact had thought about jumping off the
 6   Sunshine Skyway, which is a mental health issue, and he
 7   isn't supposed to do that either.
 8            So he is a -- I mean, he's just made clear that
 9   there's -- he's just not going to abide by any condition or
10   combination of conditions of release and is basically a
11   danger to the community.
12            His underlying crime is a crime of violence, and
13   now he has made clear that he is not going to show up or do
14   anything he's supposed to do and is a danger even to
15   himself, such that it seems that the best thing and the only
16   thing left is to detain him pending the start of his prison
17   sentence.
18            THE COURT:  Thank you, Mr. Trezevant.
19            Mr. Boardman.
20            MR. BOARDMAN:  Judge, would His Honor prefer me to
21   stand when I address the Court, or should --
22            THE COURT:  Yeah, I think that would be
23   preferable.  You can use the lecturn if you wish, or you can
24   do it at counsel table.
25            MR. BOARDMAN:  Yes, sir.
```

```
 1              Judge, Mr. Trezevant mentioned that these aren't
 2   huge violations in the sense that -- I mean, they are what
 3   they are, going to Krispy Kreme and leaving early when
 4   you're not supposed to leave early, but all of the
 5   violations, Judge, reflect somebody who hadn't really been
 6   in trouble before ever in his life.
 7              On 6-19, he had been sentenced and he didn't think
 8   he had to go to counseling anymore.  He thought after the
 9   sentencing he didn't have to go to counseling.
10              He was told he couldn't go to Krispy Kreme, Judge,
11   by Nathan Dodson.  He thought he would be able to have time
12   to go to Krispy Kreme, so he left a little bit early,
13   15 minutes early, so he could -- would have time to go to
14   Krispy Kreme.
15              He admits the violations, Judge, but they were not
16   nefarious, they were just, you know, him not doing what he
17   was supposed to be doing.
18              THE COURT:  Okay.  Mr. Howard.
19              THE DEFENDANT:  Yes, sir.
20              THE COURT:  When you were here before me prior to
21   your sentence we had a discussion.
22              THE DEFENDANT:  Yes.
23              THE COURT:  You don't need to respond, just if you
24   would listen.  You can speak if you'd like, but I suggest
25   you talk with your attorney first before you speak.  Just
```

```
 1   allow me a moment.
 2           The discussion that we had was that once you had
 3   pled guilty, the balance had shifted as far as your release
 4   conditions were concerned, and in particular once your
 5   guilty plea was accepted the balance really changed.  The
 6   presumption, absent some findings by the Court, was that you
 7   would be detained at that time, and I believe I even shared
 8   my criminal rule book with both Ms. Thomas and with
 9   Mr. Boardman to impress upon you the situation that you were
10   then in, which is that you didn't want to be on the Court's
11   radar at all, for whatever reason, least of all finding
12   yourself sitting at counsel's table.
13           At the time that I provided my rule book, I talked
14   about Section 3143 of Title 18 of the United States Code.
15   It's a lot to say in a mouthful, but here's what it says as
16   it relates to you:
17           Where there is a crime of violence, as is the case
18   here -- Mr. Trezevant pointed out as an aside that given the
19   nature of the charge, and I have your plea agreement, the
20   first element of your offense is the defendant used or
21   threatened to use force; second element is the defendant
22   intimidated or interfered with or attempted to intimidate or
23   interfere with the victim's housing right.
24           The definition of a crime of violence is one that
25   includes as an element of the offense the use, attempted use
```

1  or threatened use of physical force against a person --
2  against a person or property of another.  I think it is part
3  of the allegation here that you threatened to burn down a
4  house.
5         So in situations where the offense is a crime of
6  violence and you have been sentenced and are awaiting
7  execution of sentence, you are detained unless one of the
8  following conditions are met, two conditions are met:  The
9  Court finds there is a substantial likelihood that a motion
10 for acquittal or a new trial will be granted, or the
11 attorney for the Government has recommended that no sentence
12 of imprisonment be imposed upon the person.  That's the
13 first condition.  Either of those has to exist.
14        Well, there's not going to be a substantial
15 likelihood that a motion for acquittal or a new trial will
16 be granted, because you pled guilty, so you don't satisfy
17 the first prong, and therefore you are out.
18        The second prong is the Court finds by clear and
19 convincing evidence that a person is not likely to flee or
20 pose a danger to any other person or the community.  You put
21 the Court in a difficult position with respect to the second
22 prong, but you can't satisfy both of those conditions as you
23 must to remain on release, independent or irrespective of
24 the violations.  Even if it were not a crime of violence,
25 the Court would have to find by clear and convincing

```
 1   evidence that you are not likely to flee or pose a danger to
 2   the safety of any other person or to the community if
 3   released.  I think that's something that we talked about as
 4   well, and you nodded your head back then just as you are
 5   now.
 6            So, Mr. Howard, for the reasons that Mr. Trezevant
 7   said and for the legal reasons that I just annunciated, and
 8   based upon all the information that's before the Court,
 9   including the information that is in the Pretrial Services
10   memorandum, and notwithstanding the opportunity that you had
11   to voluntarily surrender, which was a bit of a leap of faith
12   by Judge Scriven in an effort to lower your BOP
13   classification, you forfeited that by not taking it
14   apparently seriously enough.
15            It doesn't make a difference.  You're here, and
16   under the statute you have to be detained, and nothing
17   Mr. Boardman, for all the advocacy that he's offered you
18   throughout this, and it's been admirable, can save you from
19   that statutory language.
20            It's my understanding that there's been a
21   medication perhaps issue that has been raised.  I have
22   independently addressed that myself with the Marshals Office
23   before I took the bench to ensure that Mr. Howard gets his
24   medication.  Mr. Boardman, if you should find out tomorrow
25   that that situation is not as you believe it should be, I'd
```

10

```
 1   direct you to call my chambers and I'll address it
 2   accordingly, if I have to by an order.
 3              Pinellas County Jail is very good, the Marshals
 4   Office is excellent, they're very responsive, and I have
 5   every confidence that Mr. Howard will get his medication as
 6   he needs to.
 7              Anything further from the Government?
 8              MR. TREZEVANT:  No, sir.
 9              THE COURT:  Mr. Boardman, anything from the
10   defense?
11              MR. BOARDMAN:  No, sir.
12              THE COURT:  We'll be in recess.
13                            - - - - -
14            (Proceedings concluded at 3:49 p.m.)
15                            - - - - -
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3          This is to certify that the foregoing transcript
 4   of proceedings taken in a detention hearing in the United
 5   States District Court is a true and accurate transcript of
 6   the proceedings taken by me in machine shorthand from a
 7   digital audio recording and transcribed by computer under my
 8   supervision, this the 20th day of July, 2018.
 9
10
11                                      /S/ DAVID J. COLLIER
12
13                                      DAVID J. COLLIER
14                                      OFFICIAL COURT REPORTER
15
16
17
18
19
20
21
22
23
24
25
```